IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
JUL 16 2018
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Tanyin Holley, )
    Plaintiff, )
)
v. ) 1:17cv176 (LO/JFA)
)
Sergeant Frey, et al., )
    Defendants. )

## MEMORANDUM OPINION

Tanyin Holley, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights at the Hampton Roads Regional Jail ("HRRJ"). Defendants Sergeant Nichole Frey, Sergeant William Epperson, Officer Antonio Moore, Officer Michael Kithcart, and Officer Mark Ancar (the "Correctional Defendants") filed a Motion for Summary Judgment, as well as a memorandum of law and supporting exhibits.[1] Dkt. Nos. 30-35. Plaintiff was given the Notice required by Local Rule 7(K) and the opportunity to file responsive materials pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Dkt. No. 31. Plaintiff filed an unverified response and the Correctional Defendants filed a reply. Dkt. Nos. 53-54. The motion is now ripe for adjudication. For the reasons that follow, the Correctional Defendants' Motion for Summary Judgment will be granted.

---

[1] By Order dated March 29, 2017, defendant Officer Gordon was sent a Notice of Lawsuit and Waiver of Service of Summons. Dkt. No. 7. In addition, plaintiff was notified that, if the court was unable to effect service on any defendant within 90 days of the complaint being filed, that defendant would be dismissed without prejudice. Id. The Waiver of Service of Summons sent to Officer Gordon was returned to the court unexecuted with the notations: return to sender; unable to forward. Dkt. No. 11. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, defendant Officer Gordon will be dismissed, without prejudice, because the court was unable to effect service on him within 90 days of the complaint being filed. Defendant Nurse Kristen Guess has filed a separate Motion for Summary Judgment which is pending.

## I. Background

The following facts are undisputed.[2] During the time in question, plaintiff was a pretrial detainee. Defs. MSJ at Ex. 1 ¶ 32. On December 4, 2016, plaintiff grabbed another inmate by the neck and assaulted him. Id. at Ex. 7 ¶ 4. Plaintiff was charged with assault and failure to obey an order, and was transferred to the Special Housing Unit ("SHU"). Id. at Ex. 1 ¶ 35. Based on HRRJ standard policy, plaintiff's cell in the SHU was cleaned prior to his transfer and was cleaned every day while plaintiff was at recreation or in the showers. Id. at Ex. 1 ¶¶ 15-16, 37. Plaintiff did not request cleaning supplies to clean his cell between December 4, and December 14, 2016. Id. at Ex. 1 ¶38, Ex. 15 ¶ 9. Officer Kithcart has no recollection of interacting with plaintiff in December 2016, let alone being made aware of the conditions of plaintiff's cell in the SHU; however, had he escorted plaintiff to the SHU, he would not have left plaintiff in a cell that was dirty or smelled of feces. Id. at Ex.9 ¶¶ 4-5. In addition, Officer Kithcart would have checked the sink and toilet in the cell, per HRRJ policy. Id. at Ex. 9 ¶¶ 7-9.

Nurse Carson examined plaintiff on December 4, 2016, and noted a possible right hand and left finger fracture. Id. at Ex. 10. Dr. Ines ordered an x-ray and prescribed Ibuprofen. Id.

---

[2] The facts set out here are derived from defendants' memorandum of law in support of their Motion for Summary Judgment, as well as from the attached exhibits. By Orders dated March 29, 2017, June 1, 2017, July 20, 2017, and August 14, 2017, plaintiff was directed to file a reply, "including counter-affidavits (sworn statements subject to the penalty of perjury), or other responsive material contesting the affidavits or records filed by defendants" within twenty-one days of defendants filing a responsive pleading. Dkt. Nos. 7, 21, 23, 26. In addition, in the Roseboro notice sent to plaintiff by the Correctional Defendants, plaintiff was informed that he "must identify all facts stated by the moving party with which [he] disagree[s] and [he] must set forth [his] version of the facts by offering affidavits (written statements signed before a notary public and under oath) or by filing sworn statements (bearing a certificate that it is signed under penalty of perjury)." Dkt. No. 31. Finally, plaintiff clearly understands the concept of affidavits and submitting written statements under penalty of perjury as he has submitted such documents in this matter. See Dkt. Nos. 41, 42. Because plaintiff's pleading are not sworn to, they will not be considered in establishing the undisputed record. See Fed. R. Civ. P. 56.

Plaintiff received his medications each day from December 5, to December 14, 2016, except when he refused it, and was observed by a nurse at least once during each shift. Id. at Ex. 11.

Pursuant to x-rays performed December 5, 2016, Dr. Nash found that plaintiff had a healed or healing fracture of the fourth metacarpal bone and an old facture of the fifth metacarpal bone in his left hand. Id. at Ex. 10. Dr. Nash also found that plaintiff had a fracture of the fifth metacarpal bone and swelling in his right hand. Id. Also on December 5, 2016, provider Ghaibeh referred plaintiff to an orthopedist. Id. Plaintiff was in court most of December 6, 2016, however, he refused medication during the night pill pass. Id. That same day, plaintiff was scheduled to see an orthopedist on December 15, 2016. Id.

An emergency medical code was placed for plaintiff at 5:50 pm on December 7, 2016, and Nurses Thorton, Sadler, and Dolan, as well as Officer Gordon and Sergeant Frey responded. Id. at Ex. 1 ¶ 39. Plaintiff was examined by Nurses Thorton and Sadler, but when he complained that his back hurt, he refused to roll on his side to allow them to examine his back because he said he could not move. Id. at Ex. 1 ¶ 39-40. However, plaintiff was moving his arms and feet. Id. at Ex. 1 ¶ 40, Ex. 10. Nurses Thorton and Sadler informed plaintiff that he could not receive medical assistance if he refused to be examined, and plaintiff stated that he wanted to stay on his back. Id. at Ex. 1 ¶ 40. The medical staff told Sergeant Frey that they did not believe plaintiff was so severely injured that he could not be examined, because he was moving his arms and legs, and that there was nothing else they could do without plaintiff's cooperation. Id. at Ex. 1 ¶ 42. The medical staff informed plaintiff that a nurse would check on him during pill pass and everyone left plaintiff's cell. Id. Nurse Sadler noted that plaintiff was already on pain medication and was scheduled to see a doctor. Id. at Ex. 10.

Later that night, Officer Moore observed plaintiff unresponsive, and at 10:30 pm, he entered plaintiff's cell with Sergeant Frey, Officer Ancar, and Nurse Guess. Id. at Ex. 13 ¶¶ 4-5. They found plaintiff on the floor, covered with a blanket that had previously been out of his reach, screaming that his back hurt. Id. at Ex. 1 ¶ 49, Ex. 13 ¶ 5. Plaintiff was moving his arms and legs, refused assistance, and threw a cup at one of the officers. Id. at Ex. 1 ¶ 45, Ex. 13 ¶ 6. Sergeant Frey assured plaintiff that the plumbing worked in his cell, as demonstrated by flushing the toilet and filling a glass with water. Id. at Ex. 1 ¶ 46. Nurse Guess determined that there was nothing else they could do to assist plaintiff, therefore they left his cell. Id. at Ex. 1 ¶ 47, Ex. 13 ¶ 7. During the rest of the night, Officer Moore observed plaintiff on the floor, but he was responsive and did not complain about an injury. Id. at Ex. 13 ¶ 8.

On December 8, 2016, plaintiff was standing outside his cell and told Sergeant Epperson that he injured his hand and back in a fall, but that he received treatment. Id. at Ex. 15 ¶¶ 6-7. Plaintiff then stated that there was feces under his bed, which Sergeant Epperson found, and plaintiff was transferred to a new cell later that day. Id. at Ex. 15 ¶ 5. Plaintiff did not complain to Sergeant Epperson about his injuries and he did not appear injured to Sergeant Epperson. Id. at Ex. 15 ¶¶ 5, 8.

On December 11, 2016, Nurse Jentons noted that plaintiff's hand was swollen and that he was scheduled to see an orthopedist on December 15, 2016. Id. at Ex. 10. On December 13, 2016, Nurse Weber noted that plaintiff's hand was swelling and ordered an x-ray. Id. On December 15, 2016, Dr. Blasdell noted that plaintiff had a healing metacarpal fracture in his right hand and diagnosed plaintiff with a contusion of the right hand. Id. Blasdell buddy taped plaintiff's fourth and fifth fingers and provided plaintiff with range of motion exercises. Id.

4

Every time the Correctional Defendants entered plaintiff's cell, it was in normal condition, without filth, urine or feces, and plaintiff never complaint to Sergeant Frey about the conditions of his cell. Id. at Ex. 1 ¶ 50, Ex. 13 ¶ 9. None of the Correctional Defendants have medical training beyond CPR. Id. at Ex. 1 ¶ 6, Ex. 7 ¶ 3, Ex. 9 ¶ 3, Ex. 13 ¶ 3, Ex. 15 ¶ 4.

## II. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.

5

1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. Analysis

As an initial matter, the Fifth Amendment applies only to the federal government, not to states. Because defendants are not employees or agents of the federal government, plaintiff's Fifth Amendment claims are not cognizable, and they will be dismissed. In addition, because plaintiff was a pretrial detainee at the time in question, his claims are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment. It is well established, however, that the due process rights of a pretrial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner. Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 250 (4th Cir. 2005). Accordingly, although the Eighth Amendment standard is discussed, plaintiff's claims actually arise from the Fourteenth Amendment.

Plaintiff first alleges that his rights were violated based on the conditions of his confinement. Specifically, plaintiff alleges that he was placed in a cell that was dirty, had feces "smeared everywhere," smelled "awful," and did not have running water. To establish a claim for cruel and unusual punishment due to conditions of confinement, a plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need, that is, one causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). To meet the first prong, plaintiff must allege facts sufficient to show that the condition

6



complained of was a "sufficiently serious" deprivation of a basic human need. Id. Only extreme deprivations will make out an Eighth Amendment claim, and it is plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson v. McMillian, 503 U.S. 1, 8 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). To meet the second prong, plaintiff must allege facts sufficient to show that the defendants knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that they drew that inference, and then disregarded the risk posed. Farmer, 511 U.S. at 837.

The undisputed record establishes that plaintiff had running water in his cell because Kithcart would not have placed plaintiff in the cell if it did not have running water, Sergeant Frey flushed plaintiff's toilet, and Nurse Guess filled a cup with water from plaintiff's sink. The undisputed record also establishes that plaintiff's cell was not unsanitary because, per policy, the cell was cleaned before plaintiff was transferred and was cleaned each day. Every time that the Correctional Defendants went to plaintiff's cell, they did not see any filth or feces, nor did they notice any offensive odors. In addition, plaintiff never asked for cleaning supplies during his time in the cell. Finally, the one time that any of the defendants saw feces in plaintiff's cell, he was almost immediately transferred to a different cell. Therefore, the undisputed record establishes that plaintiff was not subject to a serious deprivation of a basic human need.

Plaintiff next claims that the Correctional Defendants were deliberately indifferent to his serious medical needs. Specifically, plaintiff alleges that they were deliberately indifferent to the hand injury he received on December 4, 2016, and his back injury on December 7, 2016. To state a cognizable claim for denial of medical care, a plaintiff "must allege acts or omissions

sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Specifically, plaintiff must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. Second, he must allege deliberate indifference to that serious medical need. Under this second prong, an assertion of mere negligence or even malpractice is not sufficient to state an Eighth Amendment violation; instead, plaintiff must allege deliberate indifference "by either actual intent or reckless disregard." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (recognized in Sharpe v. S. Carolina Dep't of Corr., 621 F. App'x 732, 733 (4th Cir. 2015) as overruled on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994)). To do so, the prisoner must demonstrate that a defendant's actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. Significantly, a prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Here, the undisputed record establishes that the Correctional Defendants were not deliberately indifferent to plaintiff's medical needs. There is no evidence that the Correctional Defendants prevented plaintiff from being seen by the medical staff. Rather, plaintiff was seen by the medical staff at HRRJ on December 4, 5, 7, 11, and 13, 2016. In addition, he was evaluated by an orthopedist on December 15, 2016. Plaintiff was prescribed pain medication and was observed by a nurse at least once each shift from December 4 to 14, 2016. During the two December 7, 2016 medical visits, plaintiff complained of back pain and stated that he could not move; however, plaintiff refused to roll on to his side to be examined and the medical staff observed that he was moving his extremities. Based on their observations, the medical staff informed the Correctional Defendants present that there was nothing further that could be done to

8

help plaintiff until he became cooperative. The Correctional Defendants have no medical training beyond CPR, therefore, there is no reason why they should not have relied on the medical opinions of the HRRJ medical staff. See Miltier, 896 F.2d at 854 ("No record evidence suggests why the wardens should not have been entitled to rely upon their health care providers' expertise."). Accordingly, the Correctional Defendants were not deliberately indifferent to plaintiff's medical needs.

The undisputed record also establishes that plaintiff's back injury was not a sufficiently serious medical need. As previously stated, on December 7, 2016, plaintiff complained of back pain and stated that he could not move; however, the medical staff observed that he was moving his extremities. In addition, during the second December 7, 2016 medical visit, plaintiff was covered in a blanket that was previously out of his reach, indicating that plaintiff had moved between the medical visits. Finally, on December 8, 2016, Sergeant Epperson observed plaintiff outside of his cell. Plaintiff informed Sergeant Epperson that he had received medical treatment, and he did not complaint about his injuries. Thus, plaintiff's back injury was not a sufficiently serious medical need.

## IV. Conclusion

Because the undisputed record establishes that the Correctional Defendants did not violate plaintiff's right based on the conditions of his confinement and that they were not deliberately indifferent to plaintiff's medical needs, their Motion for Summary Judgment will be granted.[3] An appropriate Order shall issue.

Entered this 16th day of July, 2018.

/s/
Liam O'Grady
United States District Judge

Alexandria, Virginia

---

[3] Because the undisputed record establishes that the Correctional Defendants did not violate plaintiff's constitutional rights as alleged, the issue of qualified immunity need not be addressed.

9